TATE, Judge.
The plaintiff corporation brings suit to recover an alleged overpayment of commissions paid to the defendant Mouton during his employment by it as a stock salesman. The plaintiff appeals from the dismissal of its suit; the defendant answers the appeal, reurging a demand for additional compensation asserted by a re-conventional demand which had also been dismissed by the trial court.
The evidence shows that the plaintiff corporation was organized by Darwin Far-quhar in June, 1957 for the primary purpose of dealing in notes and mortgages. At first, the stock of the new corporation did not sell very well. In October, 1957 Farquhar hired Mouton to sell stock and to perform certain other services for the corporation. The evidence reflects that through the efforts of the defendant Mouton, a most capable and popular citizen, the corporation received nearly one hundred thousand dollars from the sale of stock, about one-third of its eventual working capital. Mouton worked for the company until June, 1958, when he was appointed Commissioner of Conservation for the State of Louisiana; thereafter, until December of that year, he also performed certain services for it on weekends.
In March of 1959 the stockholders became dissatisfied with Farquhar’s management. A new board of directors was elected, and Farquhar was replaced as president. Up until that time, the evidence shows, Farquhar was permitted by the former board of directors to exercise almost unlimited discretion in the management of the corporation, including in the hiring of employees, in the fixing of the terms of their compensation, and in the reimbursement of expenses incurred by them on the business of the company.
The present claim against the defendant Mouton for indemnification of alleged excess commissions resulted after an audit by the new board showed that Mouton had been paid $9,650.67, whereas he had earned commissions of only $7,213.91, based upon a net commission of 7y¿ per cent upon the proceeds actually received by the corporation of the stock sold by him.
As the trial court held, however, to Mouton’s “commission account” on the cor *734 poration’s books had been charged, not only the commissions received by him, but also reimbursement of certain expenses incurred by him while working for the company. No separate “expense account” was maintained to reflect such reimbursements. Both Farquhar and Mouton testified that, by the employment agreement, Mouton was entitled to receive such expenses in addition to his commissions. (The evidence further shows that, in addition to his work as a stock salesman, Mouton performed various other duties for the company, such as obtaining loans, making collections, helping with the management of personnel, and performing public relations work by way of consulting with dissatisfied stockholders and customers.)
Able counsel for the plaintiff contends, however, that the evidence does not support a holding that Farquhar was authorized to or did enter into any agreement with the defendant to reimburse him for these expenses, arguing that the sole agreement was to pay Mouton the 7j4 per cent commission of stock sales actually made. The corporate records and bookkeeping during Farquhar’s management, which the evidence reflects to have been solely his own responsibility, were most loosely kept and most inadequate; many of the corporate minutes during the period of his management were not available, if ever they had been made. Nevetheless, the record as a whole, in our opinion, proves that Far-quhar was permitted great discretion by the board of directors in employing personnel, that the employment arrangements he made with Mouton were within such discretion, and that all payments made to or for Mouton were within such discretion and authority and were fully justified by the services he performed or expenses he incurred for the company. The trial court correctly dismissed the plaintiff’s suit.
By his answer to the appeal, the defendant-appellee re-urges a contention asserted by his reconventional demand that, in addition to payments received, he was also supposed to receive five thousand shares of stock as a bonus for his efforts. We agree with the trial court that the evidence shows that any obligation of the plaintiff to transfer such stock, or instead to pay the defendant a salary, in return for the valuable services undoubtedly performed for it by the defendant, was extinguished by the defendant’s voluntary remission of such liability (see LSA-Civil Code Articles 2130, 2199, 2201).
For the foregoing reasons, the judgment of the trial court is affirmed; the plaintiff-appellant to pay the costs of this appeal.
Affirmed.